# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-0715

LEROY S. ROBINSON, JR.,                                          APPELLANT,

      V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS,                    APPELLEE.

Before LANCE, SCHOELEN, and PIETSCH, *Judges.*

## O R D E R

Pending before the Court are the appellant's June 23, 2015, motion disputing the content of the record before the agency (RBA) pursuant to Rule 10(b) of the Court's Rules of Practice and Procedure (Rules) and the appellant's January 27, 2016, motion to suspend Secretarial action pursuant to Rule 8 of the Court's Rules. For the reasons that follow, the Court will direct the Secretary to assemble all of the appellant's paper source documents and provide them to the appellant's representative for review pursuant to Rule 10(d) of the Court's Rules. The Court will dismiss the appellant's January 27, 2016, motion to suspend Secretarial action.

## I. BACKGROUND

On February 20, 2015, the appellant filed a Notice of Appeal from a December 3, 2014, Board of Veterans' Appeals (Board) decision that denied entitlement to an effective date earlier than December 3, 2004, for the grant of service connection for post-traumatic stress disorder (PTSD). On April 28, 2015, the Secretary served the appellant with a copy of the RBA and filed notice of the same with the Court pursuant to Rule 10(a)(5) of the Court's Rules. On June 23, 2015, the appellant filed a motion pursuant to Rule 10(b) disputing the content of the RBA. In that motion, the appellant argued that several documents were missing from the RBA, including part of his August 2001 VA Form 21-526, "Application for Compensation and/or Pension" (claims form), as well as records from the Atlanta, Georgia, VA medical center (VAMC) dated between 1992 and 2008. Appellant's June 23, 2015, Motion (Mot.) at 1. The appellant further noted that he had submitted a "request to examine documents in the original paper claims file" pursuant to Rule 10(d) of the Court's Rules. *Id.*

On July 9, 2015, the Court stayed proceedings in this case. Following the parties' unsuccessful attempts to resolve the dispute, the Clerk of the Court (Clerk) issued an order on October 9, 2015, directing the Secretary to respond within 15 days with a more detailed description of his attempts to resolve the dispute and permitting the appellant to file a reply to the Secretary's response. In his October 26, 2015, response, the Secretary stated that "a review of the documents

contained in the Veterans Benefits Management System (VBMS) and Virtual VA (VVA) electronic databases, which now officially comprise [the a]ppellant's claims file, indicates that the RBA [(that was served on the appellant)] is a true and accurate copy of the documents contained therein." Secretary's Oct. 26, 2015, Response (Resp.) at 2. He further acknowledged that "the August 2001 Application appeared to be missing pages, and that with the exception of Atlanta VAMC documents dated from January 1992 and from 2002 to 2008, the record is absent any additional records from that facility." *Id.*

With respect to the appellant's request to examine the original paper claims file, the Secretary responded that the paper documents had been "scanned and uploaded" prior to the Board's decision and that the "'original paper claims file' as it was once known is not available for review, as the official claims file in this case, as it was before the Board at the time of its decision, . . . is now entirely electronic in nature." *Id.* at 3. The Secretary noted that he had proposed that the parties enter into a joint motion for remand predicated upon a failure in the duty to assist but that the appellant declined to do so. *Id.* at 2.

The appellant filed a reply on November 4, 2015. In it, he argued that he has a right under Rule 10(d) to inspect the paper originals that were scanned into VBMS and VVA, notwithstanding the Secretary's position that those databases now constitute the "official claims file." Appellant's Nov. 4, 2015, Reply at 2, 4.

On November 19, 2015, the appellant's motion disputing the RBA was assigned to a single Judge for resolution. On December 11, 2015, the Court directed the Secretary to respond with additional information regarding the appellant's contentions, noting that "the Secretary's unwillingness to provide the appellant with records previously associated with the paper claims file is based largely on what appears to be a mid-adjudication shift in how VA has defined the 'claims file.'" *Robinson v. McDonald*, No. 15-0715, at *2 (Vet. App. Dec. 11, 2015) (unpublished order).

The Secretary filed his response on January 6, 2016. In it, the Secretary stated that, "[w]hile some paper source materials may still exist, they do not constitute the claims file and are now considered duplicates or non-records." Secretary's Jan. 6, 2016, Resp. at 7. He indicated that scanning of the paper documents for conversion into the electronic claims folder was completed by a third-party vendor utilizing quality control processes "such that on average, the likelihood of a paper document being accurately reproduced in the eFolder [in VBMS] meets or exceeds 99 percent." Secretary's Jan 6, 2016, Resp. at 8-9. He further explained that "[a]s early as December 6, 2011, VA had informed all regional offices and centers that 'quality control processes utilized by contract scanning vendors [were] sufficient to allow for the destruction of vendor-scanned documents without any additional quality assurance review.'" *Id.* at 9 (citing Exhibit (Exh.) C, VA Fast Letter 11-24, dated Dec. 6, 2011). As a result, "[t]he paper documents in VA's possession pertaining to [the a]ppellant . . . were separated, digitized, stored separately and slated for destruction pursuant to VA's stated procedures." *Id.* at 10. He argued that, because VA's digitization and planned disposal of paper records comported with the law, VA was under no

obligation to produce the paper originals and that a review of VBMS and VVA was sufficient to satisfy the requirements of Rule 10. *Id.* at 21, 11-23.

On January 8, 2016, this case was submitted to a panel for decision pursuant to Section I(b)(4) of the Court's internal operating procedures. On January 22, 2016, the Court ordered the parties and invited amici curiae to submit memoranda of law addressing the following questions:

(1) Does an appellant have the right to inspect and copy his or her source documents in an appeal to this Court, regardless of VA's transition to an electronic records management system?

(2) Must the Secretary keep a copy of the source documents after scanning such documents into VBMS or VVA?

(3) Following VA's transition to an electronic records management system, what constitutes the "record before the agency" for purposes of Rule 10? In answering this question, consider the implications, if any, of *Bell v. Derwinski*, 2 Vet.App. 611 (1992) (per curiam order) for the Secretary's obligations under Rule 10(a). *See also* U.S. VET. APP. R. 10(d).

(4) The Secretary relies on federal statutes and regulations governing the managing of records by executive agencies . . . Is there a distinction between government documents generated by an agency relating to its internal functioning and rulemaking responsibilities and documents pertaining to ongoing litigation or claims processes? To the extent that there may be a conflict, do Rule 10's requirements trump this body of law?

(5) What are the due process implications, if any, of the Secretary's failure to provide a claimant's source documents in an appeal filed at this Court?

*Robinson v. McDonald*, No. 15-0715, 2016 WL 280095, at *1 (Vet. App. Jan. 22, 2016) (per curiam order).

On January 27, 2016, the appellant filed an opposed motion pursuant to Rule 8 to suspend Secretarial action, asking the Court to enjoin the Secretary from destroying any original paper documents related to his claims and, "since the Secretary now considers these original paper documents as non-records," to turn those documents over to the appellant. Appellant's Jan. 27, 2016, Mot. at 1-2. The Court issued a temporary injunction on January 29, 2016, to prevent "the Secretary from destroying any paper records associated with this appeal until [the Court] has the opportunity to review the Secretary's response . . . and issue a final ruling on the Rule 8 Motion." *Robinson v. McDonald*, No. 15-0715, 2016 WL 365110, at *1 (Vet. App. Jan. 29, 2016) (per curiam order).

The Secretary filed a response to the appellant's Rule 8 motion on February 10, 2016. In it, he asserts that the appellant "fail[ed] to identify any sound basis whatsoever for the issuance of an

3

injunction" and instead "merely reiterate[d] the arguments that he has already made." Secretary's Feb. 10, 2016, Resp. at 2. He also argues that the appellant has not satisfied the requirements for an injunction as set forth in *Kaplan v. Brown*, 7 Vet.App. 425, 427 (1995). *Id.* at 2-7.

On March 4, 2016, the Court received the parties' memoranda of law. The Court also accepted memoranda from four amici: The Veterans Justice Group, LLC (VJG); the National Organization of Veterans' Advocates, Inc. (NOVA); a group of law school clinical directors and professors (Clinical Directors); and the National Veterans Legal Services Program (NVLSP).

On March 11, 2016, the Court requested further information from the Secretary regarding VA's authority to destroy original paper documents relevant to benefits claims and the Secretary responded on March 18, 2016. The Court heard oral argument in this case on March 29, 2016.[1]

The appellant and amicus NOVA have since filed notices of supplemental authority pursuant to Rule 30(b); amicus Clinical Directors has filed four notices of additional information pursuant to *Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013) (per curiam order) (holding that parties to a case have a "duty to notify the Court of developments that could deprive the Court of jurisdiction or otherwise affect its decision"); and amicus VJG has filed two notices of additional information pursuant to *Solze*.

## II. THE PARTIES' AND AMICI'S ARGUMENTS

### A. *Memoranda of Law*

In his memorandum of law, the appellant asserts that Rule 10(d) requires the Secretary "to make . . . original paper documents available for review." Appellant's Memorandum (Mem.) at 1. He further contends that the Secretary is required to keep a copy of paper source documents after

---

[1] Tara R. Goffney, of Bronx, New York, argued for the appellant.

Jesse B. Greenstein, of Washington, D.C., argued for the Secretary. With him on the pleadings were Leigh A. Bradley, VA General Counsel, Mary Ann Flynn, Chief Counsel, and Thomas E. Sullivan, Deputy Chief Counsel, all of Washington, D.C.

Angela K. Drake, of Columbia, Missouri, argued for amicus Clinical Directors.

Douglas J. Rosinski, of Columbia, South Carolina, argued for amicus VJG.

Kenneth M. Carpenter, of Topeka, Kansas, argued for amicus NOVA. With him on the pleading was Daniel F. Smith of Clearwater, Florida.

Amy F. Odom, of Washington, D.C., was on the pleading for amicus NVLSP.

The Court expresses its thanks to the amici curiae for their memoranda of law and participation in oral argument, which are deeply appreciated.

4

scanning them into VBMS or VVA, as to do otherwise would violate the Federal Records Act.[2]  *Id.* at 4-6, 10-15.  Finally, he argues that his Constitutional due process rights would be violated if he is not permitted to compare the paper source documents to the electronic record, as he would have no way to verify that the paper source documents were digitized accurately and completely.  *Id.* at 17-20.  He cites the risk of spoliation of evidence due to, inter alia, inherent difficulties in accurately scanning documents with handwritten annotations and notes.  *Id.*

Amici VJG and NOVA generally agree with the appellant's position.  Amicus Clinical Directors limited its response to the fourth question in the Court's January 22, 2016, order, arguing that the destruction of the appellant's paper source documents would violate both the Federal Records Act and the Court's Rules.  Clinical Directors Mem. at 5-21.  Amicus NVLSP limited its response to the third and fifth questions of the Court's January 22, 2016, order, asserting that the RBA includes all paper source documents and that the Secretary's refusal to allow the appellant to inspect those originals constitutes a due process violation.  NVLSP Mem. at 2-8.

In contrast, the Secretary argues that, "[p]rovided an appellant's paper source documents are digitized, retained and stored in his or her electronic claims folder . . . , an appellant has no absolute 'right' to inspect or copy these source documents on appeal to this Court."  Secretary's Mem. at 3-4. The Secretary further contends that the Federal Records Act and related laws, including the implementing regulations promulgated by the National Archives and Record Administration (NARA), require VA to dispose of "paper duplicates" in accordance with established procedures, regardless of any pending litigation before this Court.  *Id.* at 6-9.  Specifically, he asserts that, assuming that a conflict exists between VA's obligations under the Federal Records Act and Rule 10, "the provisions of the Federal Records Act trump the requirements of Rule 10."  *Id.* at 13; *see id.* at 13-16.  Finally, the Secretary argues that, although "general notions of fairness and due process would be violated if [the a]ppellant had not been permitted to review" his electronic claims file, the appellant's due process rights have not been violated and would not be violated by failing to provide the paper source documents.  *Id.* at 16-19.

In response to this Court's order of March 11, 2016, the Secretary further asserts that NARA had approved the destruction of a living veteran's paper source documents "after the information has been converted to an electronic medium and verified, when no longer needed for legal or audit purposes or to support the reconstruction of or serve as a backup to the electronic records . . . ." Secretary's Mar. 18, 2016, Resp., Exh. B (Standard Form 115).

### B.  Oral Argument

At oral argument, the appellant reiterated the contentions in his memorandum of law and asserted that he had obtained copies of multiple pages of handwritten medical records from the Atlanta VAMC, dated between 1992 and 2008, that were not contained in VBMS or VVA.  Oral

---

[2] The Federal Records Act "is actually a series of statutes, which originated with the Federal Records Act of 1950 . . . and the 1943 Disposal of Records Act," and has been amended by multiple subsequent acts.  *Armstrong v. Bush*, 924 F.2d 282, 284 n.1 (D.C. Cir. 1991).

Argument (O.A.) at 1:42:26. He also explained that he rejected the Secretary's offer of a joint motion for remand, as this case did not involve records that VA failed to obtain pursuant to its duty to assist but rather records that were before the regional office (RO) and still in VA's custody. O.A. at 0:07:35.

Amicus Clinical Directors argued that Rule 10 requires the Secretary to maintain the paper source documents and make them available for inspection by an appellant or an appellant's representative. O.A. at 0:25:15. The amicus suggested that the Court apply an adverse inference against the Secretary in cases where it appeared that records were missing from VBMS or VVA and the Secretary could not produce the paper source documents for inspection. O.A. at 0:25:54. Amicus VJG argued that the Court's jurisdiction permits it to review VA's records management policies, O.A. at 0:33:00, and also urged the Court to adopt an adverse inference against VA in cases where paper source documents were missing, O.A. at 0:43:28. Amicus NOVA, in contrast, argued that, "although there are very important and significant issues about spoliation and about the destruction of records, what is before this Court in this matter is limited to this Court's interpretation of its own Rule [10]." O.A. at 0:44:45.

The Secretary argued that the appellant's and amici's arguments were "based on a single flawed assumption, that is, that the Secretary has done something wrong, is doing something wrong, or is about to do something wrong" and that the appellant had not established error in this case. O.A. at 0:56:40. He also asserted that the Court's review is limited to compliance with its Rules and that the Court lacks jurisdiction to review VA's records management policies, as the Federal Records Act set forth specific mechanisms to do so. O.A. at 0:57:36. Finally, with respect to due process, the Secretary argued that the Court must look to VA's digitization process in the aggregate, rather than as applied to the appellant in this case, to determine if the procedural safeguards are adequate. O.A. at 1:18:24.

## III. ANALYSIS

The essential disputes in this case are whether the appellant or his representative has a right to review and compare the existing paper source documents with the electronic documents contained in VBMS and VVA and whether the Secretary is obligated to preserve those paper source documents. The Secretary contends that, through a digitization process designed to ensure at least 99% accuracy, the source documents have been rendered obsolete by operation of the Federal Records Act and related laws.

As an initial matter, the Court notes that the parties and amici disagree as to whether VA's records management policies comport with the Federal Records Act and whether the Court can or should review that issue. *Compare* Appellant's Mem. at 13-15; Clinical Directors Mem. at 5-21, *with* Secretary's Mem. at 13-16; O.A. at 0:57:36. For the purposes of this decision, the Court will not address that issue. Rather, even assuming *arguendo* that VA's records management policies comply with the Federal Records Act, the Court holds that the Secretary's refusal in this case to allow the appellant's representative access to the paper source documents is contrary to the requirements under 38 U.S.C. § 7252(b) and Rule 10 that the Court's review be on the record before

6

the Secretary and the Board and that the appellant be permitted to inspect and copy any original material from that record.

## A. *Legal Background*

This Court has the power, "to the extent necessary to its decision and when presented," to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary." 38 U.S.C. § 7261. In furtherance of this authority, Congress provided the Court with "broad discretion to prescribe, interpret, and apply its own rules." *Checo v. Shinseki*, 748 F.3d 1373, 1377 (Fed. Cir. 2014); *see* 38 U.S.C. § 7264(a).

"Review in the Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b). Section 7252(b) is mirrored in Rule 10(a) of the Court's Rules, which provides, in pertinent part, that the RBA shall include "all materials that were contained in the claims file on the date the Board issued the decision from which the appeal was taken," as well as "any other material from the record before the Secretary and the Board relevant to the decision on appeal." U.S. VET. APP. R. 10(a).

Rule 10 contemplates roles for both the Secretary and the appellant in producing an accurate record of proceedings. First, the Secretary must assemble an RBA containing all relevant material from the record before the Secretary and the Board and serve a copy on the appellant. *Id.* "Since the Court began operations in 1989, the Secretary, as custodian of the records of veterans' claims, has been charged with the duty of initially designating the record on appeal." *King v. Brown*, 5 Vet.App. 19, 22 (1993). "This is consistent with the situation presented by judicial review of any administrative decision where the administrator must supply from official files the documents required for review." *Id.*

The obligation to assemble an accurate RBA carries special significance in light of the Secretary's dual roles in the adjudication process. Although the Secretary is an adversarial party in Court proceedings, he is both the adjudicator and records custodian in lower proceedings, tasked with administering a system "that Congress wished to be as informal and nonadversarial as possible." *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 306 (1985); *see Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) ("In the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight."). The Court therefore "'relies on counsel for the Secretary to act as an impartial officer of the Court when [assembling] the record,'" *ZO v. Brown*, 4 Vet.App. 440, 443 (1993) (quoting *Parmley v. Derwinski*, 2 Vet.App. 383, 384 (1992) (single-judge order)), and the Secretary's "interest in veterans cases is not that [he] shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them," *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006).

At the same time, in keeping with the adversarial nature of proceedings before the Court, Rule 10(b) allows the appellant to contest the record provided by the Secretary, based, for example,

on perceived inaccuracies or omissions, and such disputes are resolved by the Court. U.S. VET. APP. R. 10(b). In this connection, Rule 10(d) requires the Secretary to allow the appellant to inspect and copy "*original material* in the record before the agency." U.S. VET. APP. R. 10(d) (emphasis added).

The importance of review on an accurate record is underscored by the decision in *Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009). There, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that a veteran's entitlement to disability benefits is a property interest protected by the Due Process Clause of the Fifth Amendment. *Id*. at 1298. The Federal Circuit further ruled that consideration of a veteran's benefit on altered evidence violates a veteran's constitutional right to a fair hearing. *Id*. at 1298-1300.

## B.  The Instant Case

The Secretary asserts that, in August 2014, VA completed the digitization of the appellant's original paper records through a scanning process designed to ensure at least 99% accuracy through a series of quality control measures. Secretary's Jan. 6, 2016, Resp. at 4-11 and Exhs. A, C. He makes no claim that VA individually verified or certified each digital document as an accurate copy of the original;[3] rather, he has submitted evidence indicating that quality control was conducted through a random sampling methodology. *Id*., Exh. C. There is no dispute that original paper records still exist that were part of the RBA. *See* Secretary's Jan. 6, 2016, Resp. at 4.

In assembling the RBA that was served on the appellant, the Secretary did not utilize or reference the original paper records. *Id*. at 2-3. Rather, the Secretary assembled the RBA "exclusively from the electronic file." *Id*. Nevertheless, the Secretary asserts that Rule 10(d), which requires him to provide the appellant with access to "original material in the record before the agency," does not apply to the original paper records here because they have been digitized and incorporated into the official claims file, now maintained in electronic form. He contends that the original paper records are now "duplicates" or "copies" and are slated for destruction in compliance with the Federal Records Act and related laws, such that Rule 10(d) only requires him to provide the appellant with access to the electronic file. *Id*.

The Court is not persuaded by the Secretary's arguments. Rule 10(d) applies by its terms to "original material." The plain meaning of this term encompasses the original paper records at issue here. The Secretary has not demonstrated that any law precludes the Court from applying Rule 10(d) in accordance with its plain meaning or that his digitization process has, by operation of law, transformed the original paper records into copies for purposes of the Court's Rule.

The Secretary initially contends that he is not required to provide access to the paper source documents under Rule 10(d) simply because they were not before the Board, having been digitized prior to the Board's decision and incorporated into the electronic file that the Board reviewed. Secretary's Oct. 26, 2015, Resp. at 3. The Court is puzzled by the Secretary's intransigence in this

---

[3] *See* 38 U.S.C. § 302(b), providing that a copy of a VA document "shall be evidence equal with the original thereof" "when authenticated by the [VA] seal and certified by the Secretary" or authorized delegate.

regard. Neither section 7252(b) nor Rule 10(a) limits the Court's review to the evidence that was before the Board, and neither of those provisions suggests that the RBA is synonymous with a veteran's claims file. Rather, Rule 10(a) requires the RBA to include the claims file at the time of the Board decision *and* any other relevant documents from the record before the Secretary. This interpretation is borne out by the Court's decision in *Bell*, which clarified that the record must include "those items considered by the Board in arriving at its decision," as well as "documents proffered by the appellant [that] are within the Secretary's control and could reasonably be expected to be a part of the record 'before the Secretary and the Board.'" 2 Vet.App. at 613 (quoting 38 U.S.C. § 7252(b)).

The Secretary also contends that he is not required to provide access to the paper source documents under Rule 10(d) because his digitization of that material has complied with the Federal Records Act as implemented by NARA. NARA is charged, inter alia, with promulgating regulations regarding the preservation and disposal of federal records and reviewing agency records schedules in this regard. 44 U.S.C. §§ 3302, 3303, 3303a. In support of his argument, the Secretary relies on 44 U.S.C. § 3312, providing as follows:

> Photographs, microphotographs of records, or digitized records made in compliance with regulations under section 3302 of this title shall have the same effect as the originals and shall be treated as originals for the purpose of their admissibility in evidence. Certified or authenticated reproductions of the photographs, microphotographs, or digitized records shall be admitted in evidence equally with the original photographs, microphotographs, or digitized records.

Section 3302 requires NARA to promulgate regulations establishing "standards for the reproduction of records by photographic, microphotographic, or digital processes with a view to the disposal of the original records." 44 U.S.C. § 3302.

The Secretary cites section 3312 as authority for the proposition that the digital records in this case "have the same effect as the once-ubiquitous physical paper claims files and must be treated as originals for the purpose of admissibility in evidence before the Court." Secretary's Jan. 6, 2016, Resp. at 16. However, the Secretary has not made even a prima facie showing that section 3312 is applicable to the digital records at issue here. That is because section 3312, by its terms, is triggered when digitized records are "made in compliance with regulations under section 3302." 44 U.S.C. § 3312. The Secretary has not identified any NARA regulations that establish, in accordance with section 3302, standards for the reproduction of records by digital processes or suggested how his reproduction process complies with any such standards. Nor has the Secretary provided any argument as to how the statute could apply in the absence of NARA regulations, given that the statute itself contains no reproduction standards.[4]

---

[4] The absence of such discussion is particularly acute in light of the fact that sections 3302 and 3312 did not refer to reproduction by digital processes when the Secretary completed the digitalization of the appellant's paper records in August 2014. *See* Secretary's Jan. 6, 2016, Resp. at 4 (stating that "the last of [the appellant's] paper documents were digitized in August 2014"); *see also id*. at 20. Until digital reproduction was added by passage of The Presidential and

9

Even if the Secretary had demonstrated the applicability of section 3312, to the extent that the Secretary asserts that section 3312 governs the "admissibility in evidence before the Court" of the digitized records, *see* Secretary's Jan. 6, 2016, Resp. at 16, the Court notes that the appellant is not challenging the admissibility of any particular document in the RBA assembled by the Secretary. *See* BLACK'S LAW DICTIONARY 55 (10th ed. 2014) (defining "[a]dmissibility" as [t]he quality, state, or condition of being allowed to be entered into evidence in a hearing, trial, or other official proceeding"). Rule 10(d) does not concern admissibility; its purpose, rather, is to help ensure that the Court's review is based on the record of proceedings that was actually before the agency with respect to its prior adjudication of the benefit on appeal, as mandated by section 7252(b). This record typically consists of many individual documents. Rule 10(d) allows inspection of "original materials" to ensure that the copy of the record of proceedings assembled by the Secretary fully encompasses the evidence that was before the administrative adjudicators, not as a prerequisite for admissibility of digitized evidence.

Moreover, the Secretary fails to explain how the NARA authority that he cites supports his contention that, by operation of law, the electronic records must be treated as originals for all purposes and that the paper source documents are now mere duplicate copies without residual value. As specific authority for his destruction of paper source documents in a physical claims file that have been converted to electronic images and incorporated into an electronic claims file, the Secretary cites a September 7, 2010, NARA approval, identified as job number N1-15-10-6. Secretary's Mar. 18, 2016, Resp. at 4-5 and Exh. B (Standard Form 115 containing the N1-15-10-6). He further cites a NARA letter stating that "N1-15-10-6, item 1c approved the disposition of source documents scanned during the conversion of paper claims files to electronic images for an electronic case file." Secretary's Mar. 4, 2016, Resp. at 8 and Exh. C (March 2015 NARA letter).[5] The N1-15-10-6 provides, in pertinent part, that "VA *may* destroy" original materials after conversion to electronic records is "verified" and "when no longer needed for legal or audit purposes, or to support the reconstruction of or serve as a backup to the electronic records . . . ." *Id.* (emphasis added). These terms were incorporated into VA's Records Control Schedule VB-1. Secretary's Mar. 4, 2016, Resp., Exh. B, pp. 35-37 (item number 3-140.100).

Assuming that the N1-15-10-6 constitutes, as asserted by the Secretary, NARA approval of his authority to destroy the paper source documents at issue here, the Secretary overlooks the fact that the authorization uses the word "may," which is customarily permissive. *See United States v. Rodgers*, 461 U.S. 677, 706 (1983) (noting that "[t]he word 'may,' when used in a statute usually implies some degree of discretion"); *see also Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion."). Although the common-sense

Federal Records Act Amendments of 2014, effective November 26, 2014, sections 3302 and 3312 only addressed "[p]hotographs and microphotographs of records." *Id. See* P.L. 113-187, 128 Stat. 2003, §§ 5(b), (e).

[5] Although the N1-15-10-6 originally applied by its terms to claims folders for deceased veterans, the Secretary asserts that the correspondence from NARA on March 2, 2015, confirmed that the approval also covers claims folders for living veterans such as the appellant. *Id.* at 8, Exh. C; Secretary's Mar. 18, 2016, Resp. at 8-9 and Exh. B. For the purposes of the present discussion, the Court need not address the appellant's challenge to this assertion.

construction is by no means invariable, the Secretary offers no support for his repeated assertions that NARA mandates, requires, or compels him to destroy the paper source documents at issue. *See Rodgers*, 461 U.S. at 706 (recognizing that the ordinary meaning of a term "can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute").

Further, the terms of NARA's authorization explicitly direct VA to consider, in addition to whether conversion of a paper record has been sufficiently verified,[6] any independent legal requirements for which the originals might be necessary and further recognizes the value of original materials for future reference in situations where verification of the electronic record might be necessary or appropriate. Section 7252(b) and the Court's implementing Rule 10 are clearly independent legal provisions that contemplate the use of original source documents, yet the Secretary
does not attempt to explain why Rule 10(d)'s requirement does not fall within NARA's exception.

Additionally, although the Secretary cites 36 C.F.R. § 1222.16 as authority for the mandatory destruction of "non-records," he again overlooks the permissive language of the regulation and fails to address its stated exception—i.e., the regulation provides that "[n]onrecord materials *should* be purged when no longer needed for reference." 36 C.F.R. § 1222.16 (2016) (emphasis added). *See Palmer v. Nicholson*, 21 Vet.App. 434, 437 (2007) (citing *United States v. Montgomery*, 462 F.3d 1067, 1069-70 (9th Cir. 2006) (holding that use of "'should' often connotes a strong suggestion, not a requirement")); *see also Qwest Corp. v. Federal Communications Comm'n*, 258 F.3d 1191, 1200 (10th Cir. 2001) ("The term 'should' indicates a recommended course of action, but does not itself imply the obligation associated with 'shall.'").

Thus, although the Court need not address the Secretary's compliance with NARA and related laws, the Court concludes that the Secretary has not demonstrated that section 3312 controls our interpretation of Rule 10(d). Rule 10(d) does not concern the admissibility of evidence and the Secretary fails to explain how, in the absence of applicable regulations promulgated under section 3302, section 3312 might have been triggered by his digitization of the paper records at issue. Additionally, because the Secretary fails to address the permissive language and exceptions contained in the regulations and authorities discussed above, the Court concludes that he has not demonstrated that he is compelled to destroy paper source documents after they have been converted to electronic form because, by operation of law, the paper source documents have become duplicates for all purposes, without any residual value and that, conversely, the electronic images must be treated as the "original material" that was before the Agency for purposes of Rule 10(d). He

---

[6] The Court need not address whether the Secretary's verification process (involving the inspection of random samples) comports with NARA requirements. The Court notes, however, that NARA General Records Schedule 4.3, submitted by the Secretary, authorizes the destruction of original source records when they have been incorporated into an electronic record system "in their entirety" and "in accordance with NARA's electronic records standards" after "verification of successful conversion." Secretary's Mar. 4, 2016, Resp., Exh. A. The Court further notes that the Secretary has not explained how his verification process comports with these standards or indicated that NARA has reviewed his process.

11

therefore has not shown that the Court is legally compelled to deviate in this case from its usual and straightforward application of that Rule.[7]

Indeed, the facts here indicate that the application of Rule 10(d) retains value with respect to digitized documents. The appellant contends that several documents that were once before the Secretary are now missing from the copy of the RBA assembled by the Secretary, including pages of his August 2001 claims form and medical records from the Atlanta VAMC dated between 1992 and 2008. Appellant's June 23, 2015, Mot. at 1. The Secretary agrees that these documents are not contained in the RBA as assembled from the electronic record, Secretary's Oct. 26, 2015, Resp. at 2, but he argues that there is no evidence that these documents were ever before VA, O.A. 1:07.

With respect to the appellant's August 2001 claims form, the very fact that pages are missing from that document suggests that it may have been improperly scanned. This implication is bolstered by VA's duty, "[i]f a claimant's application for a benefit under the laws administered by the Secretary is incomplete, . . . [to] notify the claimant and the claimant's representative, if any, of the information necessary to complete the application." 38 U.S.C. § 5102. There is no indication that the Secretary notified the appellant that his August 2001 claims form was incomplete at the time he submitted it, indicating that the full August 2001 claims form may have been, at one time, in VA's possession.

With respect to the appellant's Atlanta VAMC records, the electronic RBA contains records dated "from January 1992 and from 2002 to 2008." Secretary's Oct. 26, 2015, Resp. at 2. As amicus NVLSP notes, however, a February 2009 rating decision contained in the electronic record lists "'VAMC-Atlanta records from December 1992 to October 23, 2008' as evidence that was considered in the decision." NVLSP Mem. at 3, Exh. A. The Court concludes that, at a minimum, there is plausible evidence that a December 1992 record from the Atlanta VAMC was before the Secretary at one time during the course of these proceedings but is not now in the electronic record.

To be clear, the Court makes no determination as to whether the Secretary's current records management policies comport with the Federal Records Act or related laws. The Secretary concedes that he is in possession of original record materials that were part of the RBA in connection with VA's adjudication of the benefit on appeal to this Court. He has not provided any persuasive explanation why the authorities he cites preclude the Court from applying Rule 10(d) to those materials as part of the Court's standard procedure to fulfill the command of section 7252(b) that review before the Court take place on the record of proceedings that was before the Secretary. Accordingly, pursuant to Rule 10(d), the appellant is entitled to inspect the paper source documents and compare them with the electronic records. The Court will order the Secretary, within 15 days of the date of this order, to assemble all of the appellant's source documents and provide them to the appellant for review. The Secretary shall file a notice with the Court indicating that he has done so or, if unable to do so, detailing the reasons why he could not. Within 7 days of the date the Secretary files his notice with the Court, and every 15 days thereafter until the RBA dispute is

---

[7] Because an NOA has been filed with the Court, the Court is obligated to apply section 7252(b) and, absent a compelling reason to the contrary, its implementing Rule 10.

12

resolved or the parties reach an impasse, each party shall advise the Court as to the status of the RBA dispute.

## *C. Constitutional Due Process*

In light of this outcome, the Court holds that it would be premature to resolve any constitutional due process arguments arising from VA's records management policies. *See Bucklinger v. Brown*, 5 Vet.App. 435, 440-41 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988))); *see also Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (holding that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion"). The Court notes, however, that "[t]he presentation of improperly altered material evidence has been found to constitute a due process violation." *Cushman*, 576 F.3d at 1300.

Similarly, the Court reserves for a future case the issue of what action it would take when faced with evidence that paper source documents had been improperly scanned and destroyed, as there is no evidence that the Secretary has done so in this case. *See Quirin*, 22 Vet.App. at 396; *but see Chrysler Corp. v. United States*, 592 F.3d 1330, 1338 (Fed. Cir. 2010) ("The culpable destruction of relevant documents does not relax the burden of proof, although it may aid a party in meeting that burden by giving rise to an adverse inference that the information contained in the destroyed documents would have been unfavorable to the party responsible for their destruction."); *Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007) (rejecting the argument "that the destruction of records while in the government's custody should result in a relaxed evidentiary standard for veterans" and holding "traditional evidentiary adverse inference rules . . . inapplicable" when there is "no claim . . . that the records were willfully or recklessly destroyed"). However, as the Secretary is now on notice of Rule 10's requirements regarding the review of paper source documents, his failure to comply with those requirements "may be grounds for such action as the Court deems appropriate." U.S. Vet. App. R. 38(b); *see Solze*, 26 Vet.App. at 301.

As an aside, the Court feels compelled to express concern with the Secretary's digitization process. In his pleadings and at oral argument, the Secretary urged this Court to consider VA's digitization process in the aggregate. *See, e.g.*, Secretary's Mem. at 18 (arguing that "'[t]he procedural framework for adjudicating claims' need only 'be sufficient for the large majority of a group of claims in order to be constitutionally adequate for all'" (quoting *Cushman*, 576 F.3d at 1299-1300)); O.A. at 1:18:24. Although we are sympathetic to VA's attempts to use technology to streamline and speed up its claims processing, we are also mindful of the potential effects that this transition has on individual veterans.

When viewed in the aggregate, the "greater than 99%" accuracy rate cited by the Secretary, at first glance, seems impressive. *See* Secretary's Mem. at 18. In the context of an individual veteran's claim, however, 99% raises grave concerns, particularly given the Secretary's stated intent to destroy original material. Veterans' claims files often contain thousands of pages, including

unique evidence not available elsewhere. In a 5,000-page claims file, a 99% accuracy rate means that *50 pages* will either be scanned incorrectly or will not be scanned. Those 50 pages might include a handwritten "buddy statement" from a veteran who is now deceased or private medical records from a long-retired practitioner—evidence that is wholly irreplaceable. VA has a fiduciary duty to maintain and protect these records, and we are not convinced that the Secretary's safeguards are sufficient for this task.

Particularly troubling are findings from the VA Office of Inspector General regarding VA's transition to a paperless claims processing environment. *See* Clinical Directors Mem., Exh. I, J; Clinical Directors Apr. 22, 2016, Notice of Correspondence, Exh. A. In one report from February 2013, the Inspector General revealed "disorganized electronic claims folders and improper management of hard-copy claims." Clinical Directors Mem., Exh. I, at 2. In January 2016, the Inspector General "substantiated [an] allegation regarding a significant backlog of unprocessed veteran material resulting from inefficient preparation and handling of veteran-provided documentation at a contractor facility," including "over 1,600 boxes awaiting processing." *Id.*, Exh. J, at 1. That same report noted "a large amount of hard copy sensitive veteran information haphazardly commingled with contractor company documentation, excess office furniture, and empty computer boxes that appeared to be trash." *Id.*, Exh. J, at 3. Most recently, in April 2016, the Inspector General audited 10 ROs and "identified 69 of 155 claims-related documents improperly scheduled for destruction, which staff at 6 of the 10 [RO]s had not properly associated with veterans' claims folders." Clinical Directors Apr. 22, 2016, Notice of Correspondence, Exh. A, at 1.

These reports leave us with grave concerns regarding VA's implementation and oversight of its conversion to a paperless claims process, and the Secretary would be well served by reexamining both his records retention policies and his contracts with the vendors tasked to digitize veterans' records. Although 99% accuracy may sound adequate in the aggregate, the permanent loss or alteration of a veteran's unique and irreplaceable evidence is unacceptable.

### D. *Motion to Suspend Secretarial Action*

Finally, the Court will dismiss the appellant's January 27, 2016, motion to suspend Secretarial action pursuant to Rule 8 of the Court's Rules. In that motion, the appellant asked the Court, in part, to "issue an Order . . . that [the paper source documents] be immediately turned over" to him. Appellant's Jan. 27, 2016, Mot. at 1-2. The appellant's argument is premised on the Secretary's contention that the paper source documents are non-records. *See id.* at 2 n.1. As the Court has not addressed the validity of the Secretary's records management policies, it would be premature to grant the relief sought by the appellant. The Court will, therefore, dismiss the January 27, 2016, motion without prejudice to refiling at a later date. The Court's January 29, 2016, injunction will remain in effect until further order of the Court.

## IV.  CONCLUSION

Pursuant to 38 U.S.C. § 7252(b) and Rule 10 of this Court's Rules, the appellant or the appellant's representative has a right to inspect paper source documents in the Secretary's possession that were part of the record of proceedings before the Board or the Secretary in connection with the administrative adjudication of the benefit before the Court on appeal.  This rule applies even where the Secretary has converted paper documents into electronic records in VBMS or VVA and the Secretary must provide the paper source documents for review and comparison  with the electronic records.  If the Secretary is unable to do so, or should he choose not to do so, the Court will "take such action as [it] deems appropriate" to remedy his noncompliance with Rule 10.  U.S. VET. APP. R. 38(b); *see Solze*, 26 Vet.App. at 303 ("To the extent that the duty has not previously been made clear by the Court, . . . counsel in this case—and all parties to every case before the Court—are now on notice of their continuing responsibility.").

Upon consideration of the foregoing, it is

ORDERED that, within 15 days of the date of this order, the Secretary assemble all of the appellant's paper source documents, provide them to the appellant's representative for review pursuant to Rule 10(d), and submit a notice to the Court indicating that he has done so or, if he is unable to do so, detailing the reasons why he could not.  It is further

ORDERED that, within 7 days of the date the Secretary files his notice with the Court, and every 15 days thereafter until the RBA dispute is resolved or the parties reach an impasse, each party shall advise the Court as to the status of the RBA dispute.  The Court's July 9, 2015, stay remains in effect.  It is further

ORDERED that the appellant's January 27, 2016, motion is dismissed without prejudice to refiling.  The Court's January 29, 2016, injunction will remain in effect until further order of the Court.

DATED:  July 14, 2016                                        PER CURIAM

LANCE, *Judge*, concurring:  I fully join the Court's order.  I write separately only to note that, as the Secretary did not argue in this case that VA's digitization process is entitled to the presumption of regularity, the Court was not required to address that issue.  *See Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004) ("The presumption of regularity provides that, in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their duties.").  The Secretary is not foreclosed from attempting to invoke that presumption in a future case.  In light of the grave concerns identified in the Court's order, however, he may find it difficult to demonstrate that the presumption attaches.  *See U.S. v. Roses Inc.*, 706 F.2d 1563 (Fed. Cir. 1983) ("It is really a presumption that what appears regular is regular . . . [and] does not help to sustain an action that on its face appears irregular . . . .  If it appears irregular, it is irregular.").