**Macario VIDAL, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–429.

United States Court of Veterans Appeals.

Jan. 18, 1996.

Karen D. Hill, was on the brief, for appellant.

Mary Lou Keener, General Counsel, Norman G. Cooper, Assistant General Counsel, R. Randall Campbell, Deputy Assistant General Counsel, and Peter M. Donawick, were on the brief, for appellee.

Before KRAMER, MANKIN and IVERS, Judges.

KRAMER, Judge:

This case is before the Court on the appellant's application for an award of reasonable attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). The Court will grant the appellant's application and order the award of attorney fees and expenses in the amount of $10,533.44, consistent with this opinion.

## I. BACKGROUND

### A. Underlying Appeal

The appellant, Macario Vidal, filed a timely appeal of an April 9, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which had denied service connection for residuals of an injury of the cervical spine, including arthritis. In an August 11, 1994, single-judge memorandum decision, this Court vacated the BVA decision and remanded the matter for adjudication consistent with the decision. The Court agreed that the record supported the following BVA findings: (1) the service medical records were negative for disability of the cervical spine, (2) the appellant currently has extensive abnormalities of the cervical spine, including arthritis, which are not inconsistent with old trauma, and (3) there was no continuity of symptomatology as required by 38 C.F.R. § 3.303(b) (1993). *Vidal v. Brown*, No. 93–429, 1994 WL 424607 at \*1–2 (Vet.App. Aug. 11, 1994). However, the Court then explained that continuity of symptomatology is not necessary if there was chronic disease in service. *See* 38 C.F.R. § 3.303(b). The Court also stated that:

> In denying service connection, the BVA failed to make any finding as to whether the appellant's cervical condition was chronic in service, specifically failing to discuss whether the medical opinion of Dr. Kevin C. Mitchell ( [Record (R.) ] at 103), which addressed the cervical disability and related it to military service, constituted, in essence, a diagnosis of chronic disease in service, and if so, whether such diagnosis could be "legitimately questioned." [38 C.F.R. § 3.303(b) ]; *see Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990) (the BVA must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive). Further, a significant basis for the denial of service connection was the BVA's own impermissible, unsubstantiated medical opinion that "[i]f the veteran in fact incurred fractures of the cervical vertebrae from the [in-service] injury it would be reasonable to expect that the residuals thereof would become manifest at that time or within a short time after the inju-

ry." *See Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991) (the BVA may consider only independent medical evidence to support its findings).

*Vidal,* 1994 WL 424607 at \* 2–3.

### B. Application for Attorney Fees

On November 30, 1994, the appellant filed an application for attorney fees and expenses, claiming that he was a prevailing party, that the government's position was not substantially justified, that no special circumstances exist which would make an award unjust, and that he meets the net worth requirements and is thus an eligible party. Application (Appl.) at 1–12. The appellant requested an award of 126.25 hours at a rate of $75 per hour, augmented by a cost-of-living increase consistent with *Elcyzyn v. Brown,* 7 Vet.App. 170, 181 (1994), or a rate of $114.00 per hour, for a total fee of $14,392.50. Appl. at 15. The appellant also claimed an additional $51.14 for expenses. *Id.* at 16.

The Secretary filed a response to the appellant's application on February 16, 1995. The Secretary asserts that he does not contest the appellant's representations concerning his net worth, or the fact that the appellant is a prevailing party and that no special circumstances exist which would make an award unjust. Response (Resp.) at 14. However, the Secretary argues that his positions at the administrative level and on appeal were substantially justified, thus making an award of attorney fees unwarranted. Resp. at 14–23. The Secretary also argued that, if the Court were to award attorney fees, the appellant's claim should be reduced because the hours claimed were not reasonably expended. Resp. at 23–30.

## II. ANALYSIS

### A. Prerequisites for an EAJA Award

■ An application for an award of EAJA fees and expenses raises three predicate issues: (1) the party opposing the United States must be a prevailing party; (2) the government's position must not have been substantially justified; and (3) there must be no special circumstances which would make

an award against the government unjust. *Doria v. Brown*, 8 Vet.App. 157, 161 (1995); *Penny v. Brown*, 7 Vet.App. 348, 350 (1995). In this matter the Secretary contests only the question of substantial justification.

### B. Substantial Justification

■ In *Stillwell v. Brown*, 6 Vet.App. 291 (1994), the Court established the following standard for determining whether the Secretary's position was substantially justified:

> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

6 Vet.App. at 302; *see Felton v. Brown*, 7 Vet.App. 276, 279–80 (1994) (Secretary must demonstrate that VA's position was substantially justified both at the administrative level and before the Court). The Court has also adopted the Federal Circuit's "reasonableness" test, summarizing the guidelines as follows:

> (1) [R]easonableness is determined by the totality of circumstances, and not by any single-factor approach; (2) reasonableness "turns on what support in law and fact the government offered in defending its case, and ... the merits of the agency decision constitute only one factor in evaluating the justification for the government's litigating position in court," *Essex* [*Electro Engineers, Inc.*] *v. United States*, 757 F.2d [247], 253 [ (Fed.Cir.1985) ] (citation omitted); (3) whether the government "drag[ged] its feet," or "cooperated in speedily resolving the litigation," *id.;* and (4) whether the government "departed from established policy in such a way as to single out a particular private party," *id.* at 254 (citation omitted).

*Stillwell*, 6 Vet.App. at 302.

In this case, the Secretary argues that his position at the administrative level and on appeal was "substantially justified" because the Court's review of the BVA decision has resulted in new, different, or more stringent requirements for adjudication, *Id.* at 303, and that in this particular case, the Court applied a novel interpretation of 38 C.F.R. § 3.303(b). The Secretary also maintains that the Court departed from such established precedent as *Kightly v. Brown*, 6 Vet.App. 200, 206 (1994); *Elkins v. Brown*, 5 Vet.App. 474, 478 (1993); and *Reonal v. Brown*, 5 Vet.App. 458, 460–61 (1993) (which rejected medical opinions offered by the veteran). Since the appellant has alleged that VA's position was not substantially justified, the burden to demonstrate substantial justification rests with the Secretary. *Stillwell*, 6 Vet.App. at 301; *Cook v. Brown*, 6 Vet.App. 226, 237 (1994), *aff'd* 68 F.3d 447 (Fed.Cir. 1995).

As to the Secretary's argument regarding whether the Court adopted a novel interpretation of 38 C.F.R. § 3.303(b), the Secretary, in essence, argues that the Court's decision of August 11, 1994, was incorrectly decided. First, judgment and mandate issued with respect to this decision in August and October 1994, respectively. The time for expressing dissatisfaction over the result was prior to, not subsequent to, these events. Second, the Secretary, not the Court, is responsible for the language of 38 C.F.R. § 3.303(b). That language requires only that a disease must be shown to be chronic in service, but in no way limits the time frame in which such showing must be made.

The Court, in its decision on the merits, held that contrary to *Gilbert, supra,*

> [T]he BVA failed to make any finding as to whether the appellant's cervical condition was chronic in service [*see* 38 C.F.R. § 3.303(b) (1993) ], specifically failing to discuss whether the medical opinion of Dr. Kevin C. Mitchell (R. at 103), which addressed the cervical disability and related it to military service, constituted, in essence, a diagnosis of chronic disease in service, and if so, whether such diagnosis could be 'legitimately questioned.'

*Vidal*, 1994 WL 424607 at * 2–3.

Pursuant to 38 U.S.C. § 7104(d)(1), the Board is required to provide a written state-

ment of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *Gilbert*, 1 Vet.App. at 57. To comply with this requirement, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Ibid.*

The Court also stated that, contrary to *Colvin, supra,*

> a significant basis for the denial of service connection was the BVA's own impermissible, unsubstantiated medical opinion that '[i]f the veteran in fact incurred fractures of the cervical vertebrae from the [in-service] injury it would be reasonable to expect that the residuals thereof would become manifest at that time or within a short time after the injury [R. at 6–7].'

*Vidal*, 1994 WL 424607 at * 2–3. The BVA, however, may consider only independent medical evidence to support its findings. *Colvin*, 1 Vet.App. at 175.

*Gilbert* was decided on October 12, 1990 (as amended on December 18, 1991); *Colvin* was decided on March 8, 1991. The BVA decision appealed to this Court was issued on April 9, 1993, and the Secretary's brief to this Court was filed on May 31, 1994; both dates more than two years after *Gilbert* and *Colvin*. Thus, in failing to correct the Board's error or to bring that error to the attention of this Court, the Secretary acted without substantial justification. *See Elcyzyn*, 7 Vet.App. at 176 (as to *Gilbert* error); *Curtis v. Brown*, 8 Vet.App. 104, 107 (1995) (as to *Colvin* error).

Finally, the Court notes that the underlying claim under present law is not well grounded. See *LeShore v. Brown*, 8 Vet. App. 406, 409 (1995)("[e]vidence which is simply information recorded by a medical examiner, unenhanced by any additional medical comment by that examiner, does not constitute 'competent medical evidence' satisfying the *Grottveit* requirement"); *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993) (where the determinative issue involves medical etiology, competent medical evidence that the claim is "plausible" or "possible" is required in order for the claim to be well grounded). Thus, here, an error committed by the Secretary was rendered harmless at a later date as a result of a change in law. It is unclear whether such a change can constitute substantial justification for the original error. Because the Secretary has not predicated his efforts for showing substantial justification on this hypothesis, the Court will not, and for that matter cannot, address it. *See Cook*, 6 Vet.App. at 237 (burden to demonstrate substantial justification rests with the Secretary); *cf. Stillwell*, 6 Vet.App. at 303 (finding that although BVA incorrectly applied the law, its misinterpretation appeared reasonable, and, therefore, its position was substantially justified, because the statutory and regulatory framework of such law presents a "confusing tapestry").

### C. Award of Fees and Expenses

■ Once a claimant has met the predicate requirements for an award of EAJA fees, the Court is still faced with the question of what constitutes a "reasonable" fee. *See Commissioner, INS v. Jean*, 496 U.S. 154, 160–61, 110 S.Ct. 2316, 2319–20, 110 L.Ed.2d 134 (1990). As the Supreme Court stated in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Uttieri v. Brown*, 7 Vet.App. 415, 418–19 (1995) (quoting *Hensley* ); *Elcyzyn*, 7 Vet. App. at 176 (adopting *Hensley* test).

### 1. Hours Reasonably Expended

In his application, the appellant requested an award of 126.25 hours at a rate of $114.00 per hour, equalling $14,392.50, and costs and expenses of $51.14, for a total of $14,443.64. Appl. at 15–16. The Secretary argues that the appellant's award should be reduced for six reasons.

First, the Secretary argues that the appellant is not entitled to an award of any attorney fees because the appellant's attorney did not prevail on any issue that she litigated. Resp. at 21–23. In a recent case, the Court held that a mathematical approach in reducing hours should be avoided. *Smith v. Brown*, 8 Vet.App. 327, 330 (1995). A proper initial line of inquiry is whether the appellant's lawsuit consists of related claims. *Id.* at 330. In this appeal, all of the arguments related to essentially one issue, the issue of service connection for residuals of an injury of the cervical spine, to include arthritis. R. at 3. Thus, counsel for the appellant is entitled to an award of attorney fees because, regardless of her exact rationale for seeking remand of the appeal, all of her arguments relate to one claim.

Second, the Secretary argues that the total amount of the requested attorney fees is unreasonable. Specifically, the Secretary argues that the total attorney fee of $14,050.50 (apparently the Secretary is not contesting the three hours the appellant's counsel spent on preparing the EAJA application) is "grossly inflated" (Resp. at 25), and makes comparisons with hours expended in Social Security Administration (SSA) cases and other cases before this Court (Resp. at 25–26). In his reply brief, the appellant contends that the Secretary's reliance on SSA cases are not probative authority for this Court and are irrelevant to a determination as to an appropriate award of attorney fees. Reply at 8–9. The appellant also argues that the single-judge memorandum decisions the Secretary uses as comparisons to this appeal are not determinative in calculating a reasonable amount for fees. Moreover, the appellant contends that the attorneys on the other cases were not private practitioners running single-attorney practices, as counsel for the appellant is, but were employed by the Disabled American Veterans. Reply at 9, n. 6. The Court agrees with the appellant because each case stands on its own evaluation and is not easily comparable with any other case. In the absence of the Secretary's ability to cite any law to support his position, the Court in its discretion is not willing to engage in an exercise of hypothetical comparability of seemingly endless possibilities. Nei-

ther the Secretary nor the record provides any basis for the Court to conclude that the total amount of requested attorney fees in this case is "grossly inflated." *See Elcyzyn*, 7 Vet.App. at 177 ("[A] court has considerable 'discretion' and 'flexibility' in determining 'the amount of a fee award' ") (citations omitted).

Third, the Secretary contends that the appellant should not be compensated for $5,415 (or 47.5 hours) spent in preparing a reply brief (in the underlying appeal) since the pleading reiterated the arguments set forth in the principal brief. Resp. at 26–27. The appellant argues that his reply brief did not simply reiterate the arguments set forth in the principal brief and that in order to prepare the reply brief, it was necessary for the appellant's counsel to research the law cited by the Secretary in his response brief. Reply at 10. The Court agrees with the Secretary on this point and finds that 10 out of 15 pages or approximately two-thirds of the appellant's reply brief is a reiteration of the arguments set forth in his principal brief. *See Jordan v. U.S. Dep't of Justice*, 691 F.2d 514, 518 (D.C.Cir.1982) (holding that the Court may properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts). Accordingly, the Court will reduce the amount of time the appellant's attorney spent on the reply brief by two-thirds, or 31.7 hours.

Fourth, the Secretary argues that the appellant's request for $1,938.00 in attorney fees with respect to work involved in telephone calls, conferences, and correspondence is unreasonable. The Secretary contests reimbursement for some of the components of that amount as follows.

*a.* The Secretary first contests reimbursement for $946.20 (8.3 hours) in attorney fees for telephone conferences with Swords to Plowshares and the Veterans Consortium. Resp. at 28. The Secretary maintains that there were no complicated issues raised in this proceeding and that the phone calls were most likely for the purpose of receiving a course of instruction on veterans' law. *Ibid.* Counsel for the appellant contends that these

telephone conferences were directly related to obtaining information in order to competently represent the appellant. Reply at 11. The Secretary's assumption that the phone calls were for instruction in veterans' law is contradicted by the counsel's declaration in support of the appellant's application for attorney fees. Under the circumstances, the Court exercises its discretion by refusing to adopt, as a finding, the Secretary's unsupported assumption.

■ b. The Secretary contests the appellant's request for $604.20 (5.3 hours) for the time he spent talking to his own attorney. The Secretary argues that appellate litigation, unlike trial litigation, requires minimal contact with the client. Resp. at 28–29. The appellant argues that such contact was necessary. The Court finds the Secretary's argument unpersuasive, especially in light of the fact that an attorney has a continuing duty to keep a client reasonably informed about the status of a matter at all stages of a proceeding. *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.4 (1994).

■ c. The Secretary also contests the appellant's request of $296.40 (2.6 hours) for the time his counsel spent talking to VA counsel. The Secretary alleges, based on his own records, that almost all of the conversations were very short and adds that they did not even continue for the six-minute (.10 hour) duration for which fees are routinely requested. The Secretary also alleges that some of the calls, particularly where multiple calls were made on the same date, were situations where the appellant's attorney encountered a busy signal or no one answered the telephone. Resp. at 29. In his reply brief, counsel for the appellant asserts that she does not recall any such times when this happened. Reply at 12. The Court notes that, first, the Secretary failed to advise the Court that the appellant's counsel had to make many phone calls to locate the claims file. Appl. at Exhibit 7 at 2–4. Second, while the Court is aware that some attorneys break an hour into six-minute intervals, the Secretary has not demonstrated that recognized billing practices require a minimum expenditure of six minutes before any billing issues. In view of the failings of the Secre-

tary, the Court will not exercise its discretion to reduce the 2.6 hours.

■ Fifth, the Secretary argues that the appellant is not entitled to an award of $216.60 (1.9 hours) in attorney fees for time invested by his attorney in post-remand representation before the BVA or VA regional office (RO). While the appellant did not request attorney fees for post-remand work before the BVA or the VARO, he did request attorney fees for the time spent interpreting the Court's decision and explaining how the Court's decision should be used at the BVA and VARO level. The Court recently held in *Cleary v. Brown,* 8 Vet.App. 305 (1995), that where a matter was remanded to the BVA for a new adjudication, time spent on matters subsequent to remand, involving work at the administrative level, does not give rise to an entitlement to attorney fees. While the Court does not interpret *Cleary* as holding that any work performed subsequent to a remand can never be compensated, the Court does interpret *Cleary* as holding that such work performed or contemplated to be performed at the administrative level cannot be compensated. Thus, as it appears from counsel's declaration in support of the appellant's application for attorney fees that entries for 1.9 hours or ($216.60) relate primarily to future administrative-level work, this work will be excluded.

■ Sixth and finally, the Secretary contends that the appellant is not entitled to reimbursement for attorney fees for matters not reasonably related to the appeal. Specifically, the Secretary objects to the telephone calls to the Presidio in San Francisco ($22.80; .2 hours) and the letter to a witness for a "buddy statement" ($57.00; .5 hours), both of which are related to the appellant's effort to introduce additional evidence for the Court's consideration. The appellant argues that this additional evidence was needed in order to respond to the Secretary's brief. Reply at 13. Because the Court is precluded by statute from considering any material which was not contained in the record before the Secretary and the Board, *see* 38 U.S.C. § 7252(b) (1994); *Obert v. Brown,* 5 Vet.App. 30, 32 (1993) *Rogozinski v. Derwinski,* 1 Vet.App.

19, 20 (1990), the appellant's hours in this regard are denied.

### 2. Expenses

In addition, because the Secretary has not objected to the appellant's request for costs and expenses of $51.14, the Court will grant the amount requested for expenses. *See Penny,* 7 Vet.App. at 352 (discussing reasonableness of requested expenses); *March v. Brown,* 7 Vet.App. 163, 169–70 (1994).

### III. CONCLUSION

Upon consideration of the above, the appellant's application for EAJA fees is granted for 91.95 hours at $114.00 per hour, for a total fee award of $10,482.30, plus $51.14 in expenses.

It is so ORDERED.