# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-0913(E)

JOSEPHINE DUCKETT, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before PIETSCH, MEREDITH, and FALVEY, *Judges*.

## O R D E R

FALVEY, *Judge*, filed the opinion of the Court.

This case explores the tension between an ethical instruction of zealous appellate advocacy and a practical parameter of client billing. Although an attorney should always review the record of a case when litigating an appeal, it may be unreasonable to charge a client for a searching yet familiar review. In this application for fees under the Equal Access to Justice Act (EAJA), we decline to fully compensate an attorney for his extensive record review because he was intimately acquainted with the facts of the case and the issue on appeal was an obvious and straightforward one. It is inconceivable that a private client would pay thousands to their long-time attorney to re-review a record in such depth and in such a simple case. This should not change just because the government now remunerates the attorney's fees.

## I. MS. DUCKETT'S APPLICATION

Before limning the EAJA application at issue, we must explain the controversy that brought us here. This matter bears Josephine Duckett's name, but it originates from a request for a total disability rating based on individual unemployability (TDIU) brought by her husband, Marine Corps veteran Ronald S. Duckett. Mr. Duckett was represented throughout much of that matter by an attorney, Sean A. Ravin. *See* Record Before the Agency (RBA) at 3713-36 (attorney's argument to the Board of Veterans' Appeals (Board)), 4762 (Dec. 2012 letter from Mr. Ravin to VA indicating that he represented Mr. Duckett); *cf.* RBA at 4687-92 (Nov. 2012 joint motion for remand in Mr. Duckett's prior appeal, signed by Mr. Ravin). After years of development, the Board granted Mr. Duckett's request for TDIU. RBA at 3639. The regional office carried out this grant. RBA at 3582.

After the regional office implemented the grant of TDIU, RBA at 3582, Mr. Duckett appealed the assigned effective date to the Board, RBA at 3547-50. During the appeal, Mr. Duckett unfortunately died, and Mr. Ravin became the attorney for Ms. Duckett. RBA at 1557, 1566. Following the Board's initial dismissal of the case because of Mr. Duckett's death, RBA at 1773-75, Mr. Ravin filed a motion for substitution and explained that Ms. Duckett—the surviving spouse—

should be substituted in as the claimant, RBA at 1594-95. VA agreed, completed the substitution, and informed Ms. Duckett of her new status. RBA at 83.

But the Board was obviously unaware of this development. In a January 2024 decision, it once again dismissed her case, finding that "[d]ue to the death of the appellant, the Board has no jurisdiction to adjudicate the merits of this appeal." RBA at 5. The Board then provided details about how someone might be substituted as the claimant. RBA at 6.

Ms. Duckett appealed that decision to this Court, where she and the Secretary requested a remand so that the Board could "address Appellant's acknowledged status as the substituted party, and its jurisdiction to adjudicate the appeal." Jul. 3, 2024, Joint Motion for Remand at 2. The Clerk of the Court granted their motion and sent the matter back to the Board for further development. Jul. 15, 2024, Court Order.

Mr. Ravin then filed the application for fees that we review today. *See* Jul. 18, 2024, Application for Attorney Fees and Expenses (EAJA Application). Under the EAJA, a court may award reasonable fees and expenses to a prevailing party in certain civil actions against the United States or its agencies. 28 U.S.C. § 2412(d); *see Scarborough v. Principi*, 541 U.S. 401, 405 (2004). The parties do not disagree that Ms. Duckett is eligible for an award under the EAJA for her successful appeal; they only dispute the amount payable by the government. Secretary's EAJA Response (Resp.) at 2 n.1. The Secretary takes issue with 14.1 hours billed for a merits review of the record on appeal, which amounts to $4,011.45 of the $9,430 Ms. Duckett requested.[1] *Id.* at 4-5.

## II. REASONABLE RECORD REVIEWS

Because EAJA awards shift the cost of litigation to the taxpayers, the Court has a "special responsibility" to award Ms. Duckett "only those fees and expenses actually needed to achieve the favorable result." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004); *see Smith v. McDonough*, 995 F.3d 1338, 1344 (Fed. Cir. 2021). When calculating attorney fees under this standard, we have held that "[r]easonable fees that an EAJA applicant may recover [are] fees that would normally be charged to and paid by a private client." *Baldridge v. Nicholson*, 19 Vet.App. 227, 234 (2005). For instance, we held in *Baldridge* that "[a]pplicants are not permitted to bill for and collect fees for clerical work" because such work is "'generally considered within the overhead component of a lawyer's fee,'" and therefore the taxpayers should not be charged for such hours under the EAJA. *Id.* at 236 (quoting *Role Models,* 353 F.3d at 974).

Ms. Duckett's application, however, is not as straightforward as one that requests relief for hours spent on clerical tasks; we must eliminate such hours outright. *See id.* ("[W]ork that is purely clerical in nature may not be billed by any person, including attorneys."). Instead, the question here is the reasonableness of the time that Ms. Duckett's counsel spent reviewing the record. Clients and courts *expect* appellate attorneys to spend billable time reviewing the record on appeal when crafting their appellate arguments. *See, e.g.*, MODEL RULES OF PROF. CONDUCT r. 1.1 cmt. 5 ("Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem."). As the Federal Circuit said in *Smith*, "[t]ime spent reviewing the

---

[1] The Secretary does not contest Mr. Ravin's billing rate of $284.50 an hour. *Id.*

2

record is indispensable to pursuing any appeal" regardless of the number of ultimately successful issues. 995 F.3d at 1345; *see United States v. Pomales-Lebron*, 513 F.3d 262, 270 (1st Cir. 2008) ("It is axiomatic that lawyers are obligated to scrupulously review the record on appeal."); *Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 2004) (describing record review as a "typical prefatory step" in the appeals process). So how should our Court weigh this obligation against the obligation to not bill an adversary for unreasonable hours? As we will explain, this ultimately proves to be a factual inquiry focused on the circumstances of a particular case.

## A. Scrutinizing *Smith* and *Sperry*

Extrapolating from *Smith* and our decision in *Sperry v. Shinseki*, 24 Vet.App. 1 (2010), Ms. Duckett fashions a new presumption for gauging whether hours spent on review of an appellate record should be compensated under the EAJA. She argues that *Smith* established a presumption that the hours spent reviewing the record are reasonable unless the attorney reviewed the record at an unreasonable pace under *Sperry*. Oral Argument (OA) at 14:00-14:30, https://www.youtube.com/watch?v=QmRRPZTNfbA; *see Sperry*, 24 Vet.App. at 7 (finding that a pace of approximately 100 pages per hour was not unreasonable). This view, however, is flawed by Ms. Duckett's contorted readings of these two cases.

Although the Federal Circuit recognized the importance of record reviews, *Smith* is not written broadly enough to support Ms. Duckett's position. In that case, the veteran appealed seven denied claims to the Court, and we granted relief as to one of those seven claims. *Smith*, 995 F.3d at 1341. In his EAJA application, the claimant requested compensation for 18 hours for an initial record review, which the Secretary disputed as unreasonable. *Id*. at 1341-42. Relying on *Cline v. Shinseki*, 26 Vet.App. 18 (2012), we decided to reduce the award by 12 hours to account for any time spent reviewing the record regarding the six unsuccessful claims. *Id*. at 1342.

The Federal Circuit reversed that decision. It explained that, without reviewing the record, counsel will be unable to identify which of a variety of potential issues would likely be successfully appealed. *Id*. at 1343. In so doing, the court provided the language that Ms. Duckett believes to solidify her case: "Time spent reviewing the record is indispensable to pursuing any appeal, regardless of how many issues are ultimately appealed and regardless of the degree of success." *Id*. at 1345. The Federal Circuit then remanded the matter with instructions to compensate the veteran for the 18 hours his attorney spent reviewing the record. *Id*. at 1346.

But even a cursory look at *Smith* reveals that its holding is tailored to the particular circumstances of that matter. From the start, it explicitly cabined the analysis to answer one question, "whether, *in a case in which not all claims succeed*, an appellate counsel who spends significant time initially reviewing the extensive record of a case . . . is entitled to recompense under the EAJA for the time thus spent." *Id*. at 1342 (emphasis added). In its analysis, the Federal Circuit did not deviate from its articulation of the question presented. Indeed, the court reversed our reduction because we assumed that time spent reviewing the record included time spent on unsuccessful claims rather than viewing the time as "preparation for bringing the successful claim." *Id*. at 1345; *see id.* at 1346 ("The time spent by Mr. Smith's attorney on initial record review was necessarily expended on preparation for developing the case, including the successful claim, and

3

would have been necessary for any appeal."). Put differently, *Smith* applies only when we evaluate an EAJA application related to a mix of successful and unsuccessful claims.

The question presented in Ms. Duckett's case is entirely different: whether counsel should be compensated under the EAJA for a lengthy record review in a familiar case involving a single, simple legal and factual issue. Although both cases concern reductions in the context of record reviews, Ms. Duckett's case arrived after a remand of the Board's obviously incorrect dismissal of a single matter; *Smith*'s concerns about reducing an award because there were both successful and unsuccessful claims are not implicated here. Given *Smith*'s limitations, we would be wrong to rely on that case for a rule or presumption that may be applicable here.

*Smith* also featured an attorney whose representation began *after* the Board's decision was issued, *id*. at 1345-46; whereas the attorney here helped shepherd the claimants through both the VA appeals process and the later substitution issue. An attorney's level of familiarity mattered to the Federal Circuit in *Smith* because, in many cases before this Court, "the record was not necessarily made by persons trained in legal appeals." *Id*. at 1346. In such instances, the duty of new counsel to pay close attention to the record was thus heightened. *Id*. The level of experience or familiarity an attorney has with a case therefore informed *Smith*, just as Mr. Ravin's experience and familiarity with this matter will also inform our decision here not to award the full amount requested.

As if this were not enough, *Smith* concludes by explaining that there "may be instances in which the time spent on reviewing the record is unreasonable." *Id*. That sentence extinguishes all of Ms. Duckett's remaining hopes that *Smith* established a rebuttable presumption of reasonableness in hours spent reviewing the record. In other words, *Smith* does not prohibit us from reducing an award for reasons other than those implicated in that decision or in *Sperry*. And it certainly does not permit us to read in a rebuttable presumption. The *Smith* court merely recited the uncontroversial—and conceded—point that an attorney must review the record when deciding what and how to appeal. It did not create a rule that any time spent reviewing the documents in a record is presumptively subject to EAJA payment.

Moreover, Ms. Duckett's contention that *Sperry* provides the one exception to this perceived rule is baffling. The primary issue in *Sperry* was whether an attorney was in violation of ethical rules for a perceived conflict of interest. *Sperry*, 24 Vet.App. at 3-6. To be sure, *Sperry* also considered whether an EAJA award was reasonable. *Id*. at 6-7. Yet that discussion flowed from the primary issue: we granted one attorney an award in full because we found no conflict of interest, and we granted 23.8 hours to another attorney given the difficult position he was placed in due to the withdrawal of the first attorney. *Id*. Beyond that, *Sperry* provides little guidance to courts determining whether to grant an EAJA award. And Mr. Ravin was neither dropped into a particularly difficult position before the Court nor potentially conflicted out of his representation.

Ms. Duckett cleaves to a short passage in *Sperry* in which we found it reasonable for an attorney to bill "8.3 hours to review an 844–page record." *Id*. at 7. In her reply, she compares Mr. Ravin's page-per-hour review rate to that of the attorney in *Sperry*. Appellant's EAJA Reply at 14. And at oral argument, she explained that the case can help the Court conclusively determine what

4

may be unreasonable time spent on record review. OA at 14:00-14:30. But her reliance on *Sperry* is misplaced.

First, *Sperry* does not establish a bright-line rule as to the reasonableness of time spent reviewing the record. Although *Sperry* said that a review rate of about 100 pages per hour was reasonable,[2] 24 Vet.App. at 7, that determination was specific to the facts of that particular matter. That is, we determined that 8.3 hours of record review was reasonable because the attorney was thrust into a new appeal. *Id*. at 6 ("In light of the difficult position Mr. Sperry faced after Attorney Leonard's withdrawal, which was caused at least in part by the Secretary's refusal to consent to his representation of Mr. Sperry, the Court determines that Attorney Twyford's hours are not unreasonable on their face."). By reading the opinion as forming an independent litmus test for identifying EAJA-eligible record reviews, Ms. Duckett attempts to divorce facts from analysis. *See Vidal v. Brown*, 8 Vet.App. 488, 493 (1996) ("[E]ach case stands on its own evaluation and is not easily comparable with any other case.").

In no way did *Sperry* attempt to establish a generalized zone of reasonableness for record reviews, and in no way have we understood it to do so. We have cited *Sperry* for its discussion of the reasonableness test we employ below, *see, e.g.*, *Butts v. McDonald*, 28 Vet.App. 74, 87 (2016) (en banc), and, even in the few nonprecedential decisions in which we cited *Sperry*'s page-per-hour range, we also looked to the factual peculiarities of each case, *see, e.g.*, *Jeffrey v. McDonough*, No. 22-6778(E), 2024 WL 1193786, at *9 n.37 (Vet. App. Mar. 20, 2024) (noting that familiarity with the record plays some role in assessing EAJA fees). *But see Myrick v. McDonough*, No. 22-6247(E), 2024 WL 162811, at *5 n.28 (Vet. App. Jan. 16, 2024) (order) (citing *Sperry* for the notion that 198 pages per hour is "well within the bounds of what the Court has held to be reasonable"). This is all to say that *Sperry* is useful in repeating and applying a multi-factor test to determine whether the hours documented in an EAJA application are reasonable, but it does not purport to insulate our review from other factors that would cut against a full award.

We similarly stress that *Sperry* does not create a presumption that 100 pages per hour is a reasonable rate for reviewing the record on appeal. The very notion of such a presumption is ill-fated. Each appellate record is different, with some cases involving multiple issues implicating a detailed review of many documents and other matters turning on just the identification of a few pages. And, while some documents in a record may be relevant or difficult to decipher, others might be facially irrelevant. Although *Sperry* may provide a useful yardstick in some matters, the speed at which we think an attorney's review is reasonable is fact-specific and should depend on the record at issue.

Second, we note that Ms. Duckett's view of *Smith* and *Sperry*'s relationship is somewhat undermined by the order in which the two decisions were issued. Recall that the Federal Circuit issued *Smith* in 2021 and we issued *Sperry* in 2010. Thus, *Sperry* was not decided against the backdrop of *Smith,* and we should not read *Sperry* as establishing a sole qualifier or exception for a then-nonexistent "rule" later announced in *Smith*. Still more telling, the Federal Circuit in *Smith* made no mention of *Sperry* or its holding. Unless readily apparent in a higher court's ruling, we

---

[2] Here, Mr. Ravin's merits review of the RBA works out to a review rate of approximately 467 pages per hour. Appellant's EAJA Application at 12-13.

will not blindly assume that a decision anticipates certain caveats or contingencies found in our case law at the time. *Cf. Ingram v. Nicholson*, 21 Vet.App. 232, 249 (2007) (per curiam) (noting that "the Federal Circuit has made itself clear when it intends to overrule its own caselaw"). Nor do we place the onus on the Federal Circuit to navigate or account for our prior decisions. *Cf. Rorie v. McDonough*, 37 Vet.App. 430, 443-44 (2024).

Our study of these cases therefore teaches us that Ms. Duckett's proposed test is unsupported by the case law she relies on. In *Smith*, the Federal Circuit did not intend to wrap our EAJA cases in a presumption shielding appellate record review from tests of reasonableness. Its analysis was limited to a different question concerning awards stemming from both successful and unsuccessful claims. Nor do we understand *Sperry* to describe circumstances under which a record review must be found reasonable. That case does not establish a workable standard to determine reasonableness based on the rate of review absent other factual considerations. None of this should be read to diminish the importance of an attorney's ethical and practical duty to review the entire record on appeal, but the speed or depth of that record review cannot be automatically reasonable, particularly if the attorney has previously reviewed the same records.

The sort of test Ms. Duckett proposes is also inconsistent with the instruction that reviewing courts should exercise discretion and flexibility when deciding the merits of an EAJA application. *See Comm'r, Immigr. and Naturalization Serv. v. Jean*, 496 U.S. 154, 163 (1990) (holding that courts have "substantial discretion in fixing the amount of an EAJA award"); *Baldridge*, 19 Vet.App. at 241 ("Each case must be reviewed on its own merit, and the Court (whether by single judge or by panel) has wide discretion to reduce individual fee entries."). Carving hours out of an application for a stricter presumption-based analysis does harm to the statute's command that we consider whether attorney fees are "reasonable." *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (citing 28 U.S.C. § 2412). Requiring the Court to apply a general presumption of reasonableness with respect to the time spent reviewing the record would improperly limit our obligation to assess that time is reasonable under the specific circumstances of a case. There are times where a rule is superior to a standard or set of factors, but this is not one of them. *See* Cass R. Sunstein, *Problems with Rules*, 83 Calif. L. Rev. 953, 961 (1995) (explaining that presumptions—a subset of rules—"attempt to specify outcomes before particular cases arise"). The application of the EAJA was meant to be flexible in cases like this.[3]

---

[3] It is prudent to address one more point before continuing. In an argument limited to her supplemental briefing, Ms. Duckett attempted to reframe the issue, contending that the Secretary must do more than simply state his position that the amount billed for RBA review is unreasonable. Appellant's Supplemental Brief (Br.) at 7-10. Yet, existing precedent anticipates that the Secretary may challenge an EAJA application from a veteran, and Ms. Duckett did not argue for the invalidation of that precedent in her briefing. *See Andrews v. Principi*, 17 Vet.App. 319, 321 (2003); *Chesser v. West*, 11 Vet.App. 497, 501 (1998). Because we are bound by our precedent, we will consider this argument no further. The Court may exercise its discretion to review the reasonableness of applications and chooses to do so here. *See Chesser*, 11 Vet.App. at 501. We likewise note that this argument would impermissibly shift the burden from the applicant—the party with the burden to show that the application is well-founded and reasonable—to the Secretary to show that it is unreasonable. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984) (observing that the burden of demonstrating reasonableness falls on the party petitioning for fees). To the extent that Ms. Duckett argues that the Secretary should not put forth unsubstantiated contentions, we find that he has not done so here. Rather, the Secretary points to the ease of the issue and counsel's familiarity as reasons to doubt that the time spent on record review was necessary to obtain Ms. Duckett's remand. Secretary's EAJA Resp. at 7-10.

6

B. *Andrews*'s Application

With Ms. Duckett's proposed presumption defeated, we again ask ourselves how to decide whether hours spent reviewing an appellate record are reasonable. The answer does not differ from the analysis we undertake with regard to all other questions about the reasonableness of an EAJA application. The multi-factor test articulated in *Andrews* adequately addresses the concerns particular to record reviews without overcomplicating our doctrine.

The genesis of the *Andrews* test comes not from the EAJA, but from a different statute. In *Hensley v. Eckerhart*, the Supreme Court dealt with a fee-shifting statute that transferred the cost of attorney fees to the government for prevailing claimants in civil rights cases unless such an award would be unjust. 461 U.S. 424, 426 (1983) (citing 42 U.S.C. § 1988). The Court explained that, to calculate a proper award, courts should find "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 433. To help facilitate that calculation, it adopted 12 factors identified by the American Bar Association's rules, the Fifth Circuit, and legislative reports to help courts determine the reasonability of awards.[4] *Id*. at 429-31. Later, *Hensley*'s test was extended to cover EAJA applications. *Jean*, 496 U.S. at 161.

The 12 *Hensley* factors remain commonplace tools that we use to gauge reasonable attorney fees. *See, e.g.*, *Johnson v. McDonald*, 28 Vet.App. 136, 141 (2016) (en banc), *aff'd sub nom. Butts v. Wilkie*, 721 F. App'x 988 (Fed. Cir. 2018). Over time, however, we have added other factors for consideration that were not initially contemplated in *Hensley*. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440-41 (2011) (noting the distinct and peculiar character of veterans law compared to other civil litigation). For instance, we may consider whether "an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-attorneys" and whether time spent was "'duplicative, unorganized, or otherwise unproductive'." *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997) (quoting *Vidal*, 8 Vet.App. at 493. We may also reduce an award if the hours are obviously unreasonable or if the Secretary persuades us to do so. *Chesser*, 11 Vet.App. at 502.

The many factors we consider in assessing the reasonableness of an EAJA application were articulated in *Andrews* as a threefold analysis that builds from the case law described above: "the Court will consider whether the hours claimed were (1) unreasonable on their face, (2) otherwise contraindicated by the factors itemized in [either *Hensley* or *Ussery*] for measuring reasonableness, or (3) persuasively opposed by the Secretary." 17 Vet.App. at 321 (citations omitted). The application of this analysis is not intended to be an exact science but is meant to anticipate the circumstances and nuances of each matter to which it applies. Although some factors might theoretically collide or blend, others might stand out to a reviewing court as a reason to reduce or grant an EAJA award in practice. *Cf. Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009) (noting that the Supreme Court has not "provide[d] a definitive list of factors that should be

---

[4] Those factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill needed to properly complete the legal service; (4) preclusion of an attorney's employment due to his or her representation in the case; (5) the customary fee; (6) the fixed or contingent nature of the fee; (7) imposed time limitations; (8) the amount at stake and the results achieved; (9) the experience, reputation, and ability of the attorney; (10) undesirability associated with the case; (11) the nature and length of the representation; and (12) awards in similar cases. *Id*. at 430 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

considered in determining whether a fee is reasonable or [explained] how those factors should be weighed" (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002)).

We see no reason to change course when it comes to an attorney's review of the appellate record, as the methodology we articulated in *Andrews*—the number of hours reasonably expended multiplied by a reasonable hourly rate—is "the guiding light of our fee-shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Abandoning the *Andrews* test only in the context of record reviews would be to engage in a treacherous act of judicial wayfinding. Although there are reasons why certain stages of litigation like record review implicate different considerations, the Supreme Court has spoken on the general issue of EAJA calculations. And the formula we articulated in *Andrews*, with its 16 nondispositive factors, has been sufficient in previous cases in which the Court encountered a disputed record review. The introduction of a test that is specific to record reviews could transform an EAJA adjudication into a second major litigation, a circumstance that the Supreme Court has expressly cautioned against. *See Hensley*, 461 U.S. at 437. Therefore, we will continue to apply *Andrews* to this issue instead of endorsing a second test that is particular to record reviews.

### III. MS. DUCKETT'S AWARD

All that is left to do is calculate the amount Ms. Duckett is entitled to under the EAJA. To review, we employ the "lodestar" method when examining EAJA applications, which requires us to find "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Elcyzyn v. Brown*, 7 Vet.App. 170, 176-77 (1994) (quoting *Hensley*, 461 U.S. at 433). The number of reasonable hours, in turn, is determined through the application of *Andrews*, which considers, among its many factors, whether a private client would be charged for such hours. *Andrews*, 17 Vet.App. at 321. Although the burden is on the appellant to show that the claimed rate and number of hours are reasonable, *Blum*, 465 U.S. at 897, the Secretary will not prevail in his opposition should he provide an insufficient rationale for a disagreement regarding hours that seem reasonable, *see Ussery*, 10 Vet.App. at 54.

Several factors counsel against awarding Ms. Duckett compensation for the total time that Mr. Ravin spent on a merits review of the record. Chief among these is that the novelty and difficulty of the issue on appeal are low. *See Hensley*, 461 U.S. at 430 n.3. Unlike cases in which counsel must interpret a law for the first time or dredge through reams of medical evidence to determine the merits of a possible appeal, this case was as straightforward as they come. The only appealable issue from the Board's decision was its transparently incorrect dismissal for a lack of substitution. RBA at 5-6. Putting aside that substitution itself is a commonplace issue, *see Reliford v. McDonald*, 27 Vet.App. 297, 302 (2015) (explaining substitution), VA had already accepted Ms. Duckett as the substituted claimant; the only thing this case required was pointing out this former agency action. This is not a herculean task for the same attorney who prepared and filed that motion for substitution.[5] And resolving an obvious agency mistake through a joint motion is

---

[5] In her supplemental briefing, Ms. Duckett argues that she framed the appeal as correcting the Board's "simple error" as a litigation strategy formed after a review of the full record. Appellant's Supplemental Reply Br. at 10. We fail to see any other strategy here that Ms. Duckett could have wisely taken in the face of the Board's singular jurisdictional mistake. Thus, we disagree that a full merits review of the record could have informed the appellate

not novel; correcting VA's mistakes through a joint motion for remand is a regular and encouraged course of action in our appellate procedure. *See* U.S. Court of Appeals for Veterans Claims, PROCEDURAL GUIDANCE FOR RULE 33 STAFF CONFERENCES, https://www.uscourts.cavc.gov/ procedural_requirements.php ("The purpose of [a conference] is to facilitate the narrowing or full resolution of the issues to be presented by the appellant on appeal."); *Carter v. Shinseki*, 26 Vet.App. 534, 542 (2014) ("A joint motion for remand is an effective tool for identifying errors and speedily and efficiently resolving a veteran's claim. Properly used, it benefits the appellant, the Secretary, and the Court."), *overruled on other grounds by Carter v. McDonald*, 794 F.3d 1342 (Fed. Cir. 2015).

Given the elementary nature of this appeal, successful representation of Ms. Duckett required a low level of time and skill relative to other cases before the Court. *See Hensley*, 461 U.S. at 430 n.3. Because the only issue was whether the Board lacked jurisdiction for want of substitution, an attorney only needed to review the record to find and present the veteran's death certificate, Ms. Duckett's request for substitution, and VA's substitution of Ms. Duckett as the claimant. *See* RBA at 83, 1566, 1594. As long as an attorney understands what to look for within the record, the task of identifying the materials needed for the Rule 33 conference is almost clerical rather than legal. And since Mr. Ravin submitted Mr. Duckett's death certificate and Ms. Duckett's motion for substitution for inclusion in the record, he was well aware of what documents he needed and what documents had been sent to VA *before* he filed this appeal on behalf of Ms. Duckett.

Mr. Ravin, an attorney who has practiced in this Court on numerous occasions, undoubtedly has the experience needed to understand the task at hand. *See Hensley*, 461 U.S. at 430 n.3.[6] And unlike many veterans benefits attorneys, who begin their representation of a claimant before this Court, Mr. Ravin represented both Mr. and Ms. Duckett in this matter while it was before VA. He therefore had an added familiarity with the posture of the appeal and the obvious error in the Board's dismissal. *See id*. Unlike the attorney in *Smith*, who reviewed several possible appellate issues the first time he touched the case, Mr. Ravin should have been able to determine with relative ease that the Board's one-dimensional decision was facially flawed. *See* 995 F.3d at 1345-46. He knew that Mr. Duckett had an ongoing claim at the time of his death, that Mr. Ravin had filed to substitute Ms. Duckett as the claimant, that VA accepted the substitution, that the Board wrongly dismissed the case, and that the record included the documentation to prove it—after all, he had submitted it. Because he had the experience with substitution and familiarity with the specifics of Ms. Duckett's case, a private client in Ms. Duckett's situation would likely expect a quick record review focused on the documents concerning substitution.[7]

---

strategy in this case, but we agree that some other cases might require a more searching review to develop an appellate strategy.

[6] To be clear, we are not suggesting that we would necessarily compensate an inexperienced attorney under the EAJA for the hours needed to review or become acquainted with the issue of substitution. *See Baldridge*, 19 Vet.App. at 238 (explaining that time an attorney spends catching up on an issue might not be billed to a client).

[7] We emphasize that our finding here is specific to the circumstances of Mr. Ravin's representation of Ms. Duckett in this appeal. Nothing in our decision should be construed as imposing a general rule that familiarity with a case is an automatic reason to reduce an award, as this may have an improper chilling effect on attorneys taking on repeat clients. As we stress, the issue comes down to reasonableness. If counsel needs to expend more time to review the same records, we would expect some explanation if the reason is not obvious from the facts of the case.

The bottom line is that the balance of the *Andrews* factors weigh against granting an EAJA award for the full 14.1 hours Mr. Ravin spent conducting a merits review of the appellate record. The attorney here is too skilled and experienced to conduct such a lengthy and detailed record review to resolve a simple, routine issue in a matter he was all too familiar with and with success all but guaranteed. *See Andrews*, 17 Vet.App. at 321 (citing *Hensley*, 461 U.S. at 430 n.3). We will therefore use our discretion to reduce Ms. Duckett's EAJA award to reflect a more reasonable amount of record review. *See Jean*, 496 U.S. at 161-63.

In so doing, we do not mean to undermine the importance of record review. It is an obligation attorneys have to their clients and the Court. Everyone, including the Secretary, agrees that attorneys should always review the record on appeal before making arguments to any appellate court. *See Smith*, 995 F.3d at 1345. This is especially true in the VA context, since the record is quilted together from individual VA documents before it is served on the claimant, often amounting to hundreds of documents. Our Rules of Practice and Procedure (Rules) recognize as much. *See* U.S. VET. APP. R. 10(a). A responsible attorney may engage in a preliminary review of the RBA to ensure that all relevant documents are included and dispute the record if something is amiss. *See* U.S. VET. APP. R. 10(b). The attorney may thereafter begin a merits review, like the one the Secretary convincingly disputes here, so as to determine what and how to appeal.

Although Rule 10 emphasizes the need for a complete record, which necessarily requires a review of the RBA, Ms. Duckett cannot rely on that rule to convince us that 14.1 hours of a merits review was appropriate. If anything, the rule bolsters our decision to *reduce* her award. Rule 10 permits the claimant the opportunity to contest the record after determining "whether the RBA is accurate and complete." *Green v. McDonald*, 28 Vet.App. 281, 288 (2016) (per curiam order); *see* U.S. VET. APP. R. 10(b). The rule is meant to facilitate compliance with the requirement that appeals to this Court must be based on an accurate RBA. *See Robinson v. McDonald*, 28 Vet.App. 178, 184-85 (2016) (per curiam order). Complying with the rule gives the attorney a chance to gain familiarity with the record, but nothing in the text of Rule 10 or in our case law tells us how long attorneys should spend on a particular page, especially at the separate merits stage. This separation is further illustrated by Ms. Duckett's application, in which Mr. Ravin separately billed for time spent by a nonattorney practitioner examining the RBA under Rule 10 for "legibility and completeness." Appellant's EAJA Application at 12.

Ms. Duckett's application also sought fees for the time spent by the nonattorney practitioner creating an RBA index following the Rule 10 review. *Id.*[8] With an organized record, merits review for simple issues may become swift. When an issue is as simple as this one, an attorney may avoid needless review of records that have no bearing on the appeal after noting their inclusion. As applied here, the record included material unrelated to the jurisdictional issue on appeal but, given the index, Mr. Ravin would have been able to skip past such clearly irrelevant records, such as medical exams and the like, to the documents demonstrating substitution. Thus, the act of reviewing the record for completeness under Rule 10 and indexing the record should streamline the merits review process when an experienced attorney encounters an uncomplicated appeal. *See* OA at 38:00-38:40. Because Mr. Ravin was not looking for needles in a haystack, we think that

---

[8] The Secretary does not contest reimbursement for the Rule 10 work.

10

14.1 hours is an unreasonable amount of time to scour the record for a few certain and indexed records proving Ms. Duckett's proper substitution and the Board's mistake.[9]

Hoping to cast her case in a more complicated light, Ms. Duckett tells us that the issue on appeal necessarily included arguments beyond proving proper substitution. She explains that she "also had to consider whether the Board's error was prejudicial." Appellant's Supplemental Reply Br. at 10 (citing 38 U.S.C. § 7261(b)(2)). In her view, looking through the record to find evidence that Mr. Duckett had a pending appeal and that she was a beneficiary who timely filed for and was granted substitution was required in case the Secretary disputed any of those points. *Id*.

Fair enough, but given Mr. Ravin's prior representation of both Ducketts, he already had the answers to those questions before his review of the record began, *see* OA at 7:00-8:40, and a private client would not be billed for the time it would take him to remind himself of those facts, *see Baldridge*, 19 Vet.App. at 236. At minimum, we do not think a private client would be billed for more than 14 hours of such work in a case that their attorney was already familiar with.

We also believe that an attorney with Mr. Ravin's skill and experience would know what to search for to fortify his appeal against a nonprejudicial error attack.[10] And because the record was previously reviewed and indexed before Mr. Ravin began his merits review, we find that identifying in the record the Board's decision, the death certificate, and documents evidencing the pending appeal and proper substitution is a task that would not take any more than a few hours to successfully complete. To reflect the time that a seasoned attorney should take reviewing an indexed record for these relevant documents, we find that some—but not most—of the hours Mr. Ravin spent on his merits review of the record are eligible under the EAJA.

This should not come as a surprise. Although we opined on the proper contexts of *Smith* and *Sperry*, our analysis ultimately led us back to the *Andrews* factors, which was the established EAJA test before Ms. Duckett filed her application. And that test centers on the facts of each matter, with outcomes determined by the claimant's justification of the requested award. Had Ms. Duckett better justified the hours spent on Mr. Ravin's review of the record under some of the *Andrews* factors, we might have been convinced that her requested fee was reasonable.

But as presented by the application, we conclude that this is an instance where the issue on appeal has had an obvious conclusion from the start, featuring an attorney who knew that because he had represented the veteran and the appellant in the proceedings below. A different record and

---

[9] Ms. Duckett explained that being prepared for her Rule 33 conference also required a complete review of the record to write a statement of issues. *See* OA at 6:30 (citing U.S. VET. APP. R. 33). We think our discussion of Rule 10 also discounts this Rule 33 argument. With support from the RBA index and from his own experience with the case and the law, Mr. Ravin should have been able to quickly diagnose the only issue on appeal and identify all the relevant documents needed to write his statement.

[10] Defending a client from harmless error arguments makes sense. Here, however, it is difficult to think how harmless error could be relevant. Perhaps it might be if Mr. Duckett's original request for an earlier effective date had no merit, or if the substitution was in danger. But Mr. Ravin had a duty not to pursue a frivolous claim on behalf of the Ducketts. He knew the merits of their claim. And he knew the facts of the substitution request and that VA had granted that request. With all that background, it is difficult to imagine Mr. Ravin being able to convince Ms. Duckett to pay thousands of dollars for him to have another look through her case file in anticipation of an unlikely argument.

11

circumstances might require a different pace and level of review. But it is the appellant who bears the burden of proving that the time spent reviewing the record was reasonable. *See Blum*, 465 U.S. at 897. Put differently, the simpler the case and the more familiar the appellant's attorney is with the relevant facts, the more persuasion we will need that a prolonged merits record review is reasonable under the EAJA. Here, Ms. Duckett's application did not adequately explain why her attorney should be paid by the taxpayer for a lengthy record review in a familiar and simple case. And despite Ms. Duckett's argument to the contrary, there is no presumption that record review at a certain pace and without regard to the complexity of a case is reasonable.

Ms. Duckett argues that "[t]he nature and length of the professional relationship does not relieve an attorney of their ethical responsibilities under the Model Rules of Professional Conduct." Appellant's Supplemental Reply Br. at 18. We recognize that ethical considerations must be taken seriously, including an attorney's responsibility to review the record on appeal when crafting arguments. The Court also understands that, as Mr. Ravin explained during oral argument, many attorneys do not recall every facet of the record they helped to build and must therefore refresh their familiarity with the issues through the review. *See* OA at 1:01:11-1:01:25 ("My notes are often inaccurate . . . and I have to double check things.").[11] It is one thing to stay appropriately abreast of one's cases, and it is another to charge a client for the time spent on a searching review of the record in a case with which an attorney is intimately familiar. *See Baldridge*, 19 Vet.App. at 238.

Ethical requirements serve as guideposts for the professional practice of law. But the time spent conforming with those requirements does not bestow a presumption of reasonableness under the EAJA. Indeed, demanding payment for conforming to minimal ethical standards attempts to turn professionalism into profit. *See Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 488-89 (1988) (O'Connor, J., dissenting) (explaining that attorneys have "an ethical obligation to temper one's selfish pursuit of economic success by adhering to standards of conduct" regardless of incentives); *see generally* W. Bradley Wendel, *Morality, Motivation, and the Professional Movement*, 52 S.C. L. REV. 557 (2001). To be clear, we are not suggesting any impropriety here. But, even though reviewing an appellate record is a responsible practice, the amount of time spent on such review is not always reasonable under the EAJA. This is one of those instances.

### IV. CONCLUSION

After examining the facts of this case, we find that Ms. Duckett's EAJA application features an unreasonable request for the 14.1 hours that Mr. Ravin spent on a merits review of the record. We therefore exercise our discretion to reduce her award for those 14.1 hours by 80%, a reduction of 11.28 hours, or $3,209.16, which amounts to a total award of $6,220.84. By ordering that reduction, we account for the nature of this simple matter and Mr. Ravin's association with Ms. Duckett's case, while respecting the longstanding obligation of appellate lawyers to review the record.

---

[11] We also understand Ms. Duckett's point that attorneys can make a mistake and may need to reconsider or take another look at the record when it is time for an appeal. Still, we expect attorneys to exercise billing judgment when finalizing the client's bill. *See Baldridge*, 19 Vet.App. at 234. It strains credulity to think that a client would pay their attorney for a third or fourth look at the entire record at the same rate as when the attorney first picked up the case, especially when the attorney wants to make sure that no mistake was made.

12

Accordingly, it is

ORDERED that Ms. Duckett's July 18, 2024, EAJA application is GRANTED IN PART in the amount of $6,220.84.

DATED: November 12, 2025

13